ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

'14 JUN -5 AM 10: 02

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA
           Plaintiff

v.

$472,871.95 IN FUNDS SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING IN 9957;
$1,523.71 IN FUNDS SEIZED FROM JP MORGAN
CHASE ACCOUNT ENDING IN 7067;
$24,000.33 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
0136;
$55,870.05 IN FUNDS SEIZED FROM VIEWPOINT
BANK ACCOUNT ENDING IN 3422;
$19,750.84 IN FUNDS SEIZED FROM JP MORGAN
CHASE ACCOUNT ENDING IN 9939;
$27,047.72 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
4061;
$22,710.87 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
0633;
$28,573.64 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
3450;
$18,491.25 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
5060;
$57,329.22 IN FUNDS SEIZED FROM VIEWPOINT
BANK ACCOUNT ENDING IN 3656;
$158,215.45 IN FUNDS SEIZED FROM JP MORGAN
SECURITIES ACCOUNT ENDING IN 9264;
$34,800.63 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
7572;
$99,980.21 IN FUNDS SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING IN 5393;

CIVIL NO.

**3-14CV-2037B**

**Complaint for Forfeiture – Page 1 of 58**

$30,332.68 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
0732;
$100,345.26 IN FUNDS SEIZED FROM VIEWPOINT
BANK ACCOUNT ENDING IN 9469;
$29,859.72 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
7761;
$510.34 IN FUNDS SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING IN 1942;
$8,142.81 IN FUNDS SEIZED FROM METRO BANK
ACCOUNT ENDING IN 8404;
$24,228.46 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
5504;
$10,458.53 IN FUNDS SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING IN 3722;
$31,020.28 IN FUNDS SEIZED FROM AMERICAN
AIRLINES AIRPASS ACCOUNT 92WVH18;
$382,812.13 IN FUNDS SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING IN 3825;
$5,444.70 IN FUNDS SEIZED FROM METRO BANK
ACCOUNT ENDING IN 8066;
$31,020.28 IN FUNDS SEIZED FROM AMERICAN
AIRLINES AIRPASS ACCOUNT 94WVH44;
$438.19 IN FUNDS SEIZED FROM BANK OF
AMERICA ACCOUNT ENDING IN 3812;
$98,173.28 IN FUNDS SEIZED FROM JP MORGAN
SECURITIES ACCOUNT ENDING IN 9268;
$27,871.98 IN FUNDS SEIZED FROM
OPPENHEIMER ACCOUNT ENDING IN 6567;
$59,754.43 IN FUNDS SEIZED FROM JP MORGAN
SECURITIES ACCOUNT ENDING IN 4100;
$16,242.59 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
4663;
$19,292.78 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
5367;
$40,198.73 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
0512;

$32,538.02 IN FUNDS SEIZED FROM
OPPENHEIMER FUNDS ACCOUNT ENDING IN
0301;
$102,101.52 IN FUNDS SEIZED FROM
PRUDENTIAL ANNUITIES SERVICE ACCOUNT
E1160821;
$4,461.34 IN FUNDS SEIZED FROM JP MORGAN
CHASE ACCOUNT ENDING IN 9352;
2013 BMW 535I, VIN# WBAFR7C52DC819318;
2014 MERCEDES-BENZ CLS63 VIN#
WDDLJ7GB8EA100462;
2007 BMW 328I VIN# WBAVA335X7PG49950;
2006 MERCEDES-BENZ E350 VIN#
WDBUF56J06A802059;
2005 CHRYSLER 300 LIMITED VIN#
2C3JA53G95H674999;
WALL PAINTING, VIAPAGI PRINT "SWEEP;"
$10,000.00 IN U.S. CURRENCY;
$9,579.00 IN U.S. CURRENCY;
ASSORTED FOREIGN CURRENCIES WITH
ESTIMATED VALUE OF $682.55;
(4) PIECES OF ASSORTED JEWELRY WITH
ESTIMATED VALUE OF $6,260;
(7) ONE OUNCE GOLD CANADIAN MAPLE LEAF
COINS;
2013 FORD FUSION TITANIUM VIN#
3FA6P0K95DR378215;
$750,000.00 IN FUNDS SEIZED FROM AN IRS
TAXPAYER ACCOUNT UNDER THE NAME
LAWRENCE SHAHWAN;
REAL PROPERTY LOCATED AT 2374 KING
ARTHUR BOULEVARD, LEWISVILLE, TEXAS
REAL PROPERTY LOCATED AT 1407 NORTH
COLLINS STREET, ARLINGTON, TEXAS;
REAL PROPERTY LOCATED AT 4418 MAPLE
AVENUE, DALLAS, TEXAS;
REAL PROPERTY LOCATED AT 701 EAST 5TH
STREET, AUSTIN, TEXAS;
REAL PROPERTY LOCATED AT 9515 SKILLMAN
STREE, DALLAS, TEXAS;
REAL PROPERTY LOCATED AT 5800 MAPLE
AVENUE, DALLAS, TEXAS;
REAL PROPERTY LOCATED AT 8519 BURNET

ROAD, AUSTIN, TEXAS;
REAL PROPERTY LOCATED AT 18613 MARSH
LANE, DALLAS, TEXAS;
REAL PROPERTY LOCATED AT 130 EAST
BARDIN ROAD, ARLINGTON, TEXAS;
REAL PROPERTY LOCATED AT 5707 BROADWAY
BOULEVARD, GARLAND, TEXAS;
REAL PROPERTY LOCATED AT 3341 WINTHROP
AVENUE, FORT WORTH, TEXAS;
REAL PROPERTY LOCATED AT 28927
SOUTHEAST WOODS ROAD, EAGLE CREEK,
OREGON;
REAL PROPERTY LOCATED AT 3320 HARVARD
AVENUE, HIGHLAND PARK, TEXAS;
REAL PROPERTY LOCATED AT 5506 EAST R.L.
THORNTON FREEWAY, DALLAS, TEXAS;
REAL PROPERTY LOCATED AT 3309 WINTHROP
AVENUE, FORT WORTH, TEXAS;
REAL PROPERTY LOCATED AT 3327 – 3345
WINTHROP AVENUE, FORT WORTH, TEXAS;
REAL PROPERTY LOCATED AT 6025 CAMP
BOWIE BOULEVARD, FORT WORTH, TEXAS;
AND REAL PROPERTY LOCATED AT 6033 CAMP
BOWIE BOULEVARD, FORT WORTH, TEXAS
Defendants *In Rem.*

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its undersigned attorneys, Sarah R. Saldana,

U.S. Attorney for the Northern District of Texas, and Brian D. Poe, Assistant United States

Attorney, brings this complaint and alleges as follows in accordance with Supplemental

Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is an action to forfeit property to the United States pursuant to 18 U.S.C.

§ 981(a)(1)(A) and (a)(1)(C); and 21 U.S.C. § 881(a)(4), (a)(6), and (a)(7).

## THE DEFENDANT *IN REM*

2.     The defendant property consists of the following property, which was seized

in or about February and March 2014 and on or about June 4, 2014:

  a.   $472,871.95 in funds seized from Bank of America account ending in
       9957;

  b.   $1,523.71 in funds seized from JP Morgan Chase account ending in 7067;

  c.   $24,000.33 in funds seized from Oppenheimer Funds account ending in
       0136;

  d.   $19,750.84 in funds seized from JP Morgan Chase account ending in 9939;

  e.   $27,047.72 in funds seized from Oppenheimer Funds account ending in
       4061;

  f.   $22,710.87 in funds seized from Oppenheimer Funds account ending in
       0633;

  g.   $28,573.64 in funds seized from Oppenheimer Funds account ending in
       3450;

  h.   $18,491.25 in funds seized from Oppenheimer Funds account ending in
       5060;

  i.   $158,215.45 in funds seized from JP Morgan Securities account ending in
       9264;

  j.   $34,800.63 in funds seized from Oppenheimer Funds account ending in
       7572;

  k.   $99,980.21 in funds seized from Bank of America account ending in 5393;

  l.   $30,332.68 in funds seized from Oppenheimer Funds account ending in
       0732;

  m.   $29,859.72 in funds seized from Oppenheimer Funds account ending in
       7761;

  n.   $510.34 in funds seized from Bank of America account ending in 1942;

o.  $8,142.81 in funds seized from Metro Bank account ending in 8404;

p.  $24,228.46 in funds seized from Oppenheimer Funds account ending in 5504;

q.  $10,458.53 in funds seized from Bank of America account ending in 3722;

r.  $31,020.28 in funds seized from American Airlines Airpass account 92WVH18;

s.  $382,812.13 in funds seized from Bank of America account ending in 3825;

t.  $5,444.70 in funds seized from Metro Bank account ending in 8066;

u.  $31,020.28 in funds seized from American Airlines Airpass account 94WVH44;

v.  $438.19 in funds seized from Bank of America account ending in 3812;

w.  $98,173.28 in funds seized from JP Morgan Securities account ending in 9268;

x.  $27,871.98 in funds seized from Oppenheimer Funds account ending in 6567;

y.  $59,754.43 in funds seized from JP Morgan Securities account ending in 4100;

z.  $16,242.59 in funds seized from Oppenheimer Funds account ending in 4663;

aa. $19,292.78 in funds seized from Oppenheimer Funds account ending in 5367;

bb. $40,198.73 in funds seized from Oppenheimer Funds account ending in 0512;

cc. $32,538.02 in funds seized from Oppenheimer Funds account ending in 0301;

dd. $102,101.52 in funds seized from Prudential Annuities Service account E1160821;

ee.   $4,461.34 in funds seized from JP Morgan Chase account ending in 9352;

ff.   $55,870.05 in funds seized from Viewpoint Bank account ending in 3422;

gg.   $57,329.22 in funds seized from Viewpoint Bank account ending in 3656;

hh.   $100,345.26 in funds seized from Viewpoint Bank account ending in 9469;

ii.   2013 BMW 535I, VIN# WBAFR7C52DC819318;

jj.   2013 Ford Fusion Titanium VIN# 3FA6P0K95DR378215;

kk.   2007 BMW 328I, VIN# WBAVA335X7PG49950;

ll.   2006 Mercedes-Benz E350, VIN# WDBUF56J06A802059;

mm.   2005 Chrysler 300 Limited, VIN# 2C3JA53G95H674999;

nn.   2014 Mercedes-Benz CLS63 VIN# WDDLJ7GB8EA100462;

oo.   $10,000.00 in U.S. currency;

pp.   $9,579.00 in U.S. currency;

qq.   Wall painting, Viapagi print "Sweep;"

rr.   Assorted foreign currencies with estimated value of $682.55;

ss.   (4) pieces of assorted jewelry with estimated value of $6,260;

tt.   (7) one ounce gold Canadian maple leaf coins;

uu.   $750,000.00 in funds seized from an IRS taxpayer account in the name of Lawrence Shahwan;

vv.   Real property located at 2374 King Arthur Boulevard, Lewisville, Texas;

ww.   Real property located at 1407 North Collins Street, Arlington, Texas;

xx.   Real property located at 4418 Maple Avenue, Dallas, Texas;

yy.   Real property located at 701 E. 5th Street, Austin, Texas;

zz. Real property located at 9515 Skillman Street, Dallas, Texas;

aaa. Real property located at 5800 Maple Avenue, Dallas, Texas;

bbb. Real property located at 8519 Burnet Road, Austin, Texas;

ccc. Real property located at 18613 Marsh Lane, Dallas, Texas;

ddd. Real property located at 130 E. Bardin Road, Arlington, Texas;

eee. Real property located at 5707 Broadway Boulevard, Garland, Texas;

fff. Real property located at 3341 Winthrop Avenue, Fort Worth, Texas;

ggg. Real property located at 28927 Southeast Woods Road, Eagle Creek, Oregon;

hhh. Real property located at 3320 Harvard Avenue, Highland Park, Texas;

iii. Real property located at 5506 East R.L. Thornton Freeway, Dallas, Texas;

jjj. Real property located at 3309 Winthrop Avenue, Fort Worth, Texas;

kkk. Real property located at 3327 – 3345 Winthrop Avenue, Fort Worth, Texas;

lll. Real property located at 6025 Camp Bowie Boulevard, Fort Worth, Texas; and

mmm. Real property located at 6033 Camp Bowie Boulevard, Fort Worth, Texas.

## JURISDICTION AND VENUE

3. The court has subject matter jurisdiction over this action based on 28 U.S.C. §§ l345 and 1355(a), since this is a forfeiture action commenced by the United States of America.

4. The court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

5.     Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in this district.

## LOCATION OF DEFENDANT PROPERTY

6.     The defendant property was seized by the Drug Enforcement Administration (DEA) in the Northern and Eastern Districts of Texas.   The defendant property is now held in the following locations:

    a.   All property described in paragraph 2(a) – (ee) and (oo) is being held in the seized asset deposit fund account at the Federal Reserve Bank for the Northern District of Texas;

    b.   The property described in paragraph 2(ff) – (hh) and (pp) is being held in the seized asset deposit fund account at the Federal Reserve Bank for the Eastern District of Texas;

    c.   The property described in paragraph 2(ii) – (mm) is being held in the custody of a contractor for the U.S. Marshals in Tyler, Texas;

    d.   The property described in paragraph 2(qq) – (tt) is currently being stored with the U.S. Marshals in the Northern District of Texas; and

    e.   The property described in paragraph 2(uu) is currently being held by the Internal Revenue Service.

7.     The defendant property described as real property has not been seized.   In lieu of seizure of the real property described in the paragraphs above, the government has filed a lis pendens on these properties, as provided in 18 U.S.C. § 985.

## BASIS FOR FORFEITURE

### Synthetic Cannabinoids

8.      Beginning in or about 2010, the DEA began to see a dramatic rise in the use of substances commonly referred to as "spice" in the "designer," or synthetic, drug market.

9.      These "spice" products posed an imminent threat to the public since many of these products were mislabeled, marketed, or sold openly as "incense," "potpourri," "air fresheners," "aroma therapy products," or "legal" alternatives to controlled substances.

10.      The harmful effects from "spice" have ranged from nausea to drug-induced psychosis and even death.

11.      In addition, recent studies suggest that "spice" is the second most frequently used illegal drug among high school students in the United States.

12.      The Controlled Substances Act (CSA) contains a drug analogue[1] statute that classifies chemical analogues of existing Schedule I or II drugs as a scheduled drug in the same category.

13.      As a result of this statute and the emergence of "spice," on March 1, 2011, the DEA administratively placed five synthetic cannabinoids that were commonly found in "spice" products (JWH-018, JWH-073, JWH-200, CP-47,497, and Cannabicyclohexanol)

---

[1] A controlled substance analogue is defined as a substance which: (1) has a chemical structural substantially similar to that of a controlled substance in Schedules I or II; (2) has a stimulant, depressant or hallucinogenic effect on the central nervous system that is substantially similar to or greater than that of a controlled substance in Schedules I or II; or (3) a particular person represents or intends to have a stimulant, depressant, or hallucinogenic effect substantially similar to or greater than that of a controlled substance in Schedules I or II [21 U.S.C. 802(32)].

in Schedule I of the CSA; this action temporarily banned these substances and their analogues for one year, pending DEA and Food and Drug Administration studies.

14.     On February 29, 2012, the DEA extended the Schedule I status of these substances for six months pending the passage of a final regulatory ruling.

15.     Synthetic cannabinoids refer to a family of substances that act on the brain similar to delta-9 THC, the main psychoactive constituent of cannabis.

16.     Synthetic cannabinoids mimic the hallucinogenic effects of marijuana, and are considered "drugs" under 21 U.S.C. § 321(g)(1) because they are intended to affect the structure or a function of the body of a man.

17.     On July 9, 2012, the President signed the Synthetic Drug Abuse Prevention Act of 2012 (SDAPA) into law.

18.     The SDAPA amended the CSA by placing 26 substances in Schedule I. The list of legislatively scheduled controlled substances is found at 21 U.S.C. 812(c), and the current list of scheduled substances is published at 21 C.F.R. § 1308. These initial schedules may be modified either by legislation or by rulemaking.

19.     The legislation also creates a new definition for "cannabimimetic agents,"[2] which creates criteria by which similar chemical compounds can be controlled.

---

[2] "Cannabimimetic agents," as defined in SDAPA, are listed as Schedule I controlled substances unless specifically exempted or unless listed in another schedule.   By definition, cannabimimetic agents are any material, compound, mixture, or preparation which contains any quantity of the following substances, or which contains their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:
     a.   5-(1,1-dimethylheptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (CP-47,497);

20.     On December 21, 2012, the DEA published a rule to establish drug codes for these substances and to make technical and conforming amendments in accordance with the SDAPA.

21.     The DEA has also placed the following substances on a temporary listing of substances subject to emergency scheduling: any material, compound, mixture, or preparation which contains any quantity of the following substances:

   a. 4-methyl-N-methylcathinone (mephedrone);

   b. 3,4-methylenedioxy-N-methylcathinone (methylone); and

   c. 3,4-methylenedioxypyrovalerone (MDPV).

22.     On May 16, 2013, the DEA made the synthetic cannabinoids UR-144, XLR-11, and AKB-48 Schedule I controlled substances under the CSA for the next two years.   Part of the press release explained "these cannabinoids are often seen in so-called

---

   b. 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (cannabicyclohexanol or CP-47,497 C8-homolog);
   c. 1-pentyl-3-(1-naphthoyl)indole (JWH-018 and AM678); 1-hexyl-3-(1-naphthoyl)indole (JWH-019);
   d. 1-[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole (JWH-200);
   e. 1-pentyl-3-(2-methoxyphenylacetyl)indole (JWH-250);
   f. 1-pentyl-3-[1-(4-methoxynaphthoyl)]indole (JWH-081);
   g. 1-pentyl-3-(4-methyl-1-naphthoyl)indole (JWH-122);
   h. 1-pentyl-3-(4-chloro-1-naphthoyl)indole (JWH-398);
   i. 1-(5-fluoropentyl)-3-(1-naphthoyl)indole (AM2201);
   j. 1-(5-fluoropentyl)-3-(2-iodobenzoyl)indole (AM694);
   k. 1-pentyl-3-[(4-methoxy)-benzoyl]indole (SR-19 and RCS-4);
   l. 1-cyclohexylethyl-3-(2-methoxyphenylacetyl)indole 7008 (SR-18 and RCS-8);
   m. 1-pentyl-3-(2-chlorophenylacetyl)indole (JWH-203) and
   n. 1-butyl-3-(1-naphthoyl)indole (JWH-073);

'fake pot' products that are falsely marketed and sold as 'herbal incense' or 'potpourri' products on the Internet and by a variety of retail stores."

23.    On February 10, 2014, the DEA made synthetic cannabinoids, PB-22, 5F-PB-22, AB-Fubinaca, and ADB-Pinaca Schedule I controlled substances under the CSA for two years with a possible extension of one additional year, pending completion of the regular (permanent) scheduling process.

24.    PB-22, 5F-PB-22, AB-FUBINACA, and ADB-PINACA have been encountered extensively laced on plant material and marketed under the guise of "herbal incense." This temporary ban may be superseded by formal placement under the CSA.

25.    In addition to the banned substances listed under the CSA, the SDAPA, and DEA rules, 21 U.S.C. § 813 provides a "catch all" regarding controlled substance analogues.  According to § 813, if the controlled substance analogue is intended for human consumption, then the substance is to be treated as a controlled substance in Schedule I, for purposes of federal law.

26.    At each level of a synthetic cannabinoid distribution chain, there is typically a strong and concerted effort to create and perpetuate an illusion of legality surrounding the manufacture, sale, and use of these products.  For example, at the retail level, synthetic cannabinoid products are commonly marketed as "potpourri," "incense," "air freshener," or "aroma therapy products," and almost always carry the markings, "not for human consumption."

27. The utilization of the "not for human consumption" disclaimer is the primary basis for all synthetic cannabinoid distributors and manufacturers' defense from prosecution.

28. The misleading markings on the packages are an attempt to prevent the product from being classified under food/drug definitions, and thus subject to the Food and Drug Administration (FDA) testing and approval process, as well as regulations pertaining to labeling.

29. Under 21 U.S.C. § 352, a drug is considered misbranded unless its labeling bears adequate directions for all its intended uses.

30. In addition, a drug is considered misbranded if any of a drug's labeling is false or misleading.

31. Likewise, it is a violation of 21 U.S.C. § 331(a) to introduce or deliver a misbranded drug into interstate commerce.

32. Furthermore, it is a violation of 18 U.S.C. §§ 1341, 1343, and 1349 to devise a scheme to defraud the FDA and/or the general public by introducing a misbranded drug into commerce by utilizing the mail or wires.

### Distribution of Synthetic Cannabinoids by Lawrence Shahwan

33. Lawrence Shahwan owned and operated Sacred Sun Botanicals in the Dallas metroplex area.

34. On or before the year 2010, Shahwan and his associates worked together as a Drug Trafficking Organization (collectively referred to as "Shahwan DTO") to manufacture and distribute "spice" (a.k.a. "K2" and "synthetic marijuana"), which

contained synthetic cannabinoids, to smoke and head shops throughout the Dallas/Fort Worth area.

35.     Initially, the Shahwan DTO used the synthetic cannabinoid commonly referred to as JWH-018 to produce the hallucinogenic effect in its product.

36.     On March 1, 2011, JWH-018 was scheduled as a Schedule I controlled substance, pursuant to an emergency scheduling order by the DEA.   Once the ban on JWH-018 went into effect, the Shahwan DTO began using other synthetic cannabinoids to produce the hallucinogenic effect in its product, which included:

     a.  JWH-250;

     b.  AM-2201;

     c.  WinFX6;

     d.  UR-144;

     e.  XLR-11; and

     f.  AB-Fubinaca.

37.     Shahwan generally paid for the synthetic cannabinoids via wire transfer and had the chemicals shipped to his residence, located at 2374 King Arthur Drive, Lewisville, Texas, via U.S. Mail, United Parcel Service, or FedEx.

38.     Many of the synthetic cannabinoids purchased and used by Shahwan were either Schedule I controlled substances or analogues of Schedule I controlled substances.

39.     2374 King Arthur Drive, Lewisville, Texas, was purchased with proceeds traceable to the mail/wire fraud, distribution of a controlled substance or controlled substance analogue, and/or money laundering.

40.     2374 King Arthur Drive, Lewisville, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

41.     2374 King Arthur Drive, Lewisville, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.

42.     2374 King Arthur Drive, Lewisville, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7)

43.     The Shahwan DTO ordered the bags used to package their product from companies throughout the country, and the bags were subsequently shipped to them in the Dallas area, via U.S. mail, United Parcel Service, or FedEx.

44.     The organic plant material used to produce the Shahwan DTO's product was shipped to their manufacturing facility in the Dallas area, via U.S. Mail, United Parcel Service, FedEx, or a private courier/transportation service.

45.     The Shahwan DTO used these materials to manufacture, bag, and distribute "spice" under the following brand names:

     a.   "Afghan Ice;"

     b.   "Black Label;"

   c.  "Scentsi Star;"

   d.  "Widowmaker;"

   e.  "Assassin Revolution;"

   f.  "Yolo;"

   g.  "Gorilla Dro;"

   h.  "Gorilla Dro PoPo;"

   i.  "King Kush;"

   j.  "Relic;"

   k.  "I-Blown;"

   l.  "Fireshot;"

   m.  "Apocalypse;"

   n.  "Sour D;"

   o.  "Venom;"

   p.  "WTF;"

   q.  "D'evil;"

   r.  "Forty Two Degrees;"

   s.  "LV;"

   t.  "No More Mr. Nice Guy;" and

   u.  "Spike."

46.    The Shahwan DTO labeled, marketed, and sold these "spice" brands to the general public as:

   a.  Herbal Incense;

    b. Potpourri; and

    c. Aroma Therapy Products.

47.    The labeling on each of the "spice" packages sold by the Shahwan DTO contained materially false statements designed to defraud the Food and Drug Administration and the general public.   Examples of these materially false statements included the following phrases:

    a. "Not for human consumption;"

    b. "100% synthetic cannabinoid free;"

    c. "lab certified;"

    d. "this product does not contain...any illegal substances;"

    e. "this product is in compliance with all federal laws;"

    f. "for aromatherapy use only;"

    g. "this product is designed, marketed, and sold strictly as potpourri and is not for human consumption;"

    h. "Next Generation Potpourri;" and

    i. "does not contain any cannabinoids or controlled substances."

48.    These phrases were materially false statements designed in an attempt to prevent prosecution from law enforcement.   Each package of "spice" was manufactured and distributed for humans to consume and the synthetic cannabinoid contained in each package was designed and intended to produce a "high" or hallucinogenic effect on the brain.

49. The Shahwan DTO, through Sacred Sun Botanicals, manufactured and distributed "spice" to various smoke and head shops in the Dallas/Fort Worth area, including, but not limited to:

    a. The Gas Pipe;

    b. Smokies;

    c. Fusions;

    d. Blue Phoenix;

    e. Puff and Stuff; and

    f. Big Mikes.

50. In September 2013, the Shahwan DTO entered into an exclusive contract with the Gas Pipe, where the Shahwan DTO agreed the Gas Pipe would be its sole customer.

51. The Gas Pipe and the Shahwan DTO contract required the Shahwan DTO to provide 500,000 three gram packages of "spice" to the Gas Pipe for $8 a package, for a total contract price of $4 million.

52. The Shahwan DTO would deliver up to 40,000 three gram packages of "spice" to the Gas Pipe, located at 5800 Maple Avenue, Dallas, Texas, each Tuesday.

53. The Gas Pipe subsequently would sell each three gram bag of "spice" for approximately $24 – 32 thru their retail outlets in Texas and New Mexico.

54. In an attempt to stay one step ahead of law enforcement, the Shahwan DTO would occasionally change the synthetic cannabinoid used to manufacture their product.

55.     Each time a new synthetic cannabinoid was used, a member of the Shahwan DTO would "test" the new chemical, by smoking it, to determine its level of potency.

56.     Once the Shahwan DTO worked out the new ratio of synthetic cannabinoid to organic plant material, a batch of the new product would be given to the Gas Pipe.   The Gas Pipe would then give the new batch to their "Space Cadets" to sample (i.e. smoke) to determine its potency.

57.     In the end, the Shahwan DTO was unable to complete the Gas Pipe contract in December 2013, due to several members of the DTO being arrested on unrelated charges.

58.     The Shahwan DTO stopped manufacturing "spice" in December 2013 and members of the Shahwan DTO delivered the following items used to manufacture "spice" to the Gas Pipe main office located at 5800 Maple Avenue, Dallas, Texas:

   a.   Approximately 3,000 – 4,000 pounds of organic plant material;

   b.   Approximately 7 – 10 kilograms of synthetic cannabinoids;

   c.   Approximately 250,000 empty three gram packages, with materially false labeling, used to package "spice;" and

   d.   Approximately three gallons of tobacco flavoring.

59.     Members of the Shahwan DTO have identified the following individuals as individuals associated with the Gas Pipe, along with their respective roles:

   a.   Gerald "Jerry" Shults is the owner of the Gas Pipe;

   b.   Amy Lynn Herrig is "the lady that runs the Gas Pipe;"

   c.   Rolando Rojas is the "next in line" as far as management of the Gas Pipe;

d. Ryan Yarbro is the individual who runs the warehouse and controls the Gas Pipe inventory; and

e. Carolyn Settlemire handles all of the bookkeeping for the Gas Pipe and has written the checks to the Shahwan DTO for the purchase of "spice."

60.     In late December 2013 or early January 2014, the Gas Pipe remodeled 5800 Maple Avenue, Dallas, Texas, in order to add a room specifically designed to manufacture "spice."

61.     Once the "spice" room was completed, the Gas Pipe paid a member of the Shahwan DTO $50,000 for a hands-on tutorial on how to manufacture "spice."

62.     This tutorial was given to Amy Herrig, Rojas, and Yarbro.

63.     The Gas Pipe eventually contracted with a member of the Shahwan DTO to bag the newly manufactured "spice."

64.     By reason of the foregoing, 5800 Maple Avenue, Dallas, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

### Law Enforcement's Undercover Operations at the Gas Pipe

65.     Law enforcement has conducted surveillance and made multiple buys of "spice" from the various Gas Pipe retail locations.

### 4420 Maple Avenue, Dallas, Texas

66.     This location is owned by the Gas Pipe and does business as Gas Pipe I.

67.     The listed address for Gas Pipe I is 4420 Maple Avenue, Dallas, Texas, but the store takes up all of the store front at this location.   The official address on the tax rolls is 4418 Maple Avenue, Dallas, Texas, and is owned by the Gas Pipe.

68.     On December 11, 2013, undercover officers purchased "Afghan Ice" and "Black Label" from Gas Pipe I.

69.     Both "Afghan Ice" and "Black Label" have been identified by members of the Shahwan DTO as being exclusive products for the Gas Pipe.

70.     The packages of "Afghan Ice" and "Black Label" that were purchased from Gas Pipe I on December 11, 2013, contained the Schedule I controlled substance XLR-11.

71.     The packaging on "Afghan Ice" contained the materially false labeling of:

   a.   "not for human consumption;"

   b.   "lab certified;"

   c.   "this product does not contain…any illegal substances;" and

   d.   "this product is in compliance with all federal laws."

72.     The packaging on "Black Label" contained the materially false labeling of:

   a.   "not for human consumption;" and

   b.   "100% synthetic cannabinoid free."

73.     On March 11, 2014, undercover officers purchased "Assassin Revolution" and "Alien Loose Leaf" from Gas Pipe I.

74.     The package of "Assassin Revolution" that was purchased from Gas Pipe I on March 11, 2014, contained the Schedule I controlled substance AB-Fubinaca.

75.     The packaging on "Assassin Revolution" contained the materially false labeling of:

    a.  "not for human consumption;" and

    b.  "for aromatherapy use only."

76.     The package of "Alien Loose Leaf" that was purchased from Gas Pipe I on March 11, 2014, contained the Schedule I controlled substance analogue FUB-PB-22.

77.     The packaging on "Alien Loose Leaf" contained the materially false labeling of:

    a.  "not for human consumption;" and

    b.  "this product does not contain…any synthetic or naturally occurring cannabinoids."

78.     4418 Maple Avenue, Dallas, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

79.     4418 Maple Avenue, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

<u>9515 Skillman Street, Dallas, Texas</u>

80.     This location is owned by the Gas Pipe and does business as Gas Pipe II.

81.    On December 16, 2013, undercover officers purchased "spice" specifically labeled as "Sour D" and "WTF" from Gas Pipe II.

82.    The packages of "Sour D" and "WTF" that were purchased from Gas Pipe II on December 16, 2013, contained the synthetic cannabinoid AB-Fubinaca.

83.    The packaging on "Sour D" contained the materially false labeling of:

   a.   "not for human consumption;" and

   b.   "100% synthetic cannabinoid free;"

84.    The packaging on "WTF" contained the materially false labeling of:

   a.   "lab certified legal;"

   b.   "this product is designed, marketed, and sold strictly as potpourri and is not for human consumption…intended for adult use only."

85.    On March 12, 2014, undercover officers purchased "spice" specifically labeled as "Assassin Revolution" and "Wolf Pack Rage" from Gas Pipe II.

86.    The packages of "Assassin Revolution" and "Wolf Pack Rage" that were purchased from Gas Pipe II on March 12, 2014, contained the Schedule I controlled substance AB-Fubinaca.

87.    The labeling on the "Assassin Revolution" package was the same as previously described.

88.    The packaging on "Wolf Pack Rage" contained the materially false labeling of:

   a.   "for aromatherapy use only;"

   b.   "use one 3 gram bag for 500 square foot area;"

    c.  "not for human consumption;" and

    d.  "does not contain any cannabinoids or controlled substances."

89.    9515 Skillman Street, Dallas, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

90.    9515 Skillman Street, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

### 1407 North Collins Street, Arlington, Texas

91.    This location is owned by Gerald "Jerry" Shults and does business as Gas Pipe III.

92.    On November 22, 2013, undercover officers purchased "spice" specifically labeled as "Assassin Revolution."

93.    The November 22, 2013, package of "Assassin Revolution" purchased from Gas Pipe III contained the synthetic cannabinoid AB-Fubinaca.

94.    The labeling on the "Assassin Revolution" package was the same as previously described.

95.    On March 4, 2014, undercover officers purchased "spice" specifically labeled as "Assassin Revolution" and "Alien Loose Leaf" from Gas Pipe III.

96.    The March 4, 2014, package of "Assassin Revolution" purchased from Gas Pipe III contained the Schedule I controlled substance AB-Fubinaca.

97.    The "Alien Loose Leaf" purchased from Gas Pipe III on March 4, 2014, contained the Schedule I controlled substance analogue FUB-PB-22.

98.    The labeling on the "Assassin Revolution" and "Alien Loose Leaf" packages were the same as previously described.

99.    1407 N. Collins Street, Arlington, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

100.    1407 N. Collins Street, Arlington, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

<u>701 E. 5th Street, Austin, Texas</u>

101.    This location is owned by Gerald "Jerry" Shults and does business as Gas Pipe IV.

102.    On December 18, 2013, undercover officers purchased "spice" specifically labeled as "Forty Two Degrees" and "I-Blown" from Gas Pipe IV.

103.    Both packages of "Forty Two Degrees" and "I-Blown" purchased from Gas Pipe IV on December 18, 2013, contained the synthetic cannabinoid AB-Fubinaca.

104.    The packaging of "Forty Two Degrees" contained the materially false labeling of:

    a.    "100% synthetic cannabinoid free;" and

    b.    "Not for human consumption."

105.    The packaging of "I-Blown" contained the materially false labeling of:

    a.    "not for human consumption;" and

    b.    "for aromatherapy use only."

106.    On April 30, 2014, undercover officers purchased "spice" specifically labeled as "Plur" from Gas Pipe IV.

107.    The package of "Plur" purchased from Gas Pipe IV on April 30, 2014, contained the Schedule I controlled substance analogue THJ-2201.

108.    The packaging of "Plur" contained the materially false labeling of:

    a.    "not for human consumption;" and

    b.    The package refers to the product as "incense."

109.    701 E. 5th Street, Austin, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

110.    701 E. 5th Street, Austin, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

8519 Burnet Road, Austin, Texas

111.    This location is owned by the Gas Pipe and does business as Gas Pipe VII.

112.    On December 18, 2013, undercover officers purchased "spice" from Gas Pipe VII, which was specifically labeled as "Scentsi Star" and "Trinity."

113.    The "spice" product "Scentsi Star" has been identified by members of the Shahwan DTO as being an exclusive product for the Gas Pipe.

114.    The "Scentsi Star" purchased from Gas Pipe VII on December 18, 2013, contained the Schedule I controlled substance XLR-11.

115.    The packaging of "Scentsi Star" contained the materially false labeling of:

    a.   "not for human consumption;" and

    b.   "100% synthetic cannabinoid free."

116.    The "spice" product "Trinity" purchased from Gas Pipe VII on December 18, 2014, contained the synthetic cannabinoid AB-Fubinaca.

117.    The packaging of "Trinity" contained the materially false labeling of "this product is not for human consumption."

118.    On April 30, 2014, undercover officers purchased "spice" from Gas Pipe VII, which was specifically labeled as "Plur."

119.    The "Plur" purchased on April 30, 2014, from Gas Pipe VII contained the Schedule I controlled substance analogue THJ-2201.

120.    The packaging of "Plur" was the same as previously described.

121.    By reason of the foregoing, 8519 Burnet Road, Austin, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is

used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

122.   8519 Burnet Road, Austin, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

<u>18613 Marsh Lane, Dallas, Texas</u>

123.   This location is owned by Ridgelea Complex Management, Inc. and does business as Gas Pipe VIII.

124.   Ridgelea Complex Management, Inc. is an entity owned and controlled by Gerald Shults (the owner of the Gas Pipe).

125.   On December 11, 2013, undercover officers purchased "spice" specifically labeled as "Afghan Ice" and "WTF" from Gas Pipe VIII.

126.   Both packages of "Afghan Ice" and "WTF" that were purchased from Gas Pipe VIII on December 11, 2013, contained the Schedule I controlled substance XLR-11.

127.   The packages of "Afghan Ice" and "WTF" were the same as previously described.

128.   On March 12, 2014, undercover officers purchased "spice" specifically labeled as "Wolf Pack Rage" from Gas Pipe VIII.

129.   The package of "Wolf Pack Rage" that was purchased from Gas Pipe VIII on March 12, 2014, contained the Schedule I controlled substance AB-Fubinaca.

130.   18613 Marsh Lane, Dallas, Texas, was purchased with proceeds traceable to the mail/wire fraud, distribution of a controlled substance or controlled substance analogue, and money laundering.

131.   18613 Marsh Lane, Dallas, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

132.   18613 Marsh Lane, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

133.   18613 Marsh Lane, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

<u>1725 N. Central Expressway, Plano, Texas</u>

134.   This location is owned by Sun Can, Inc. and does business as Gas Pipe IX.

135.   On December 11, 2013, undercover officers purchased "spice" from Gas Pipe IX, which was specifically labeled as "LV."

136.   The package of "LV" purchased from Gas Pipe IX on December 11, 2013, contained the Schedule I controlled substance XLR-11.

137.   The packaging of "LV" contained the material false labeling of:

a.   "premium blend potpourri;"

    b.  "not for human consumption;" and

    c.  "50 state legal premium potpourri."

138.    On March 12, 2014, undercover officers purchased "spice" specifically labeled as "Wolf Pack Rage" and "Alien Loose Leaf" from Gas Pipe IX.

139.    The package of "Wolf Pack Rage" purchased from Gas Pipe IX on March 12, 2014, contained the Schedule I controlled substance AB-Fubinaca.

140.    The package of "Alien Loose Leaf" purchased from Gas Pipe IX on March 12, 2014, contained the Schedule I controlled substance 5F-PB-22.

141.    The packaging for both "Wolf Pack Rage" and "Alien Loose Leaf" contained the same materially false labeling as previously described.

<u>6033 Camp Bowie Blvd., Fort Worth, Texas</u>

142.    This location is owned by Amy Lynn, Inc. and does business as Gas Pipe X.

143.    6033 Camp Bowie Blvd. is unique in that it is attached to the office complex located at 3309 Winthrop Ave., Fort Worth, Texas, which is owned by Shults via Amy Lynn, Inc.

144.    On December 17, 2013, undercover officers purchased "spice" from Gas Pipe X, which was specifically labeled as "Venom" and "I-Blown."

145.    The package of "Venom" purchased on December 17, 2013, from Gas Pipe X contained the synthetic cannabinoid AB-Fubinaca.

146.    The package of "Venom" contained the materially false labeling of:

    a.  "not for human consumption;" and

    b.  "does not contain a cannabinoid or controlled substance."

147.    The package of "I-Blown" purchased on December 17, 2013, from Gas Pipe X contained the Schedule I controlled substance XLR-11.

148.    The package of "I-Blown" contained the same materially false labeling as previously described.

149.    6033 Camp Bowie Blvd., Fort Worth, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

150.    6033 Camp Bowie Blvd, Fort Worth, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

## 2053 W. Northwest Highway, Dallas, Texas

151.    This location is owned by Saehan Bank of California and does business as Gas Pipe XI.

152.    On December 16, 2013, undercover officers purchased "spice" from Gas Pipe XI, which was specifically labeled as "Forty Two Degrees."

153.    The package of "Forty Two Degrees" purchased from Gas Pipe XI on December 16, 2013, contained the synthetic cannabinoid AB-Fubinaca.

154.    The packaging of "Forty Two Degrees" contained the same material false labeling as previously described.

155.   On March 11, 2014, undercover officers purchased "spice" from Gas Pipe XI, which was specifically labeled as "Alien Loose Leaf" and "Assassin Revolution."

156.   The package of "Alien Loose Leaf" purchased from Gas Pipe XI on March 11, 2014, contained the Schedule I controlled substance analogue FUB-PB-22.

157.   The package of "Assassin Revolution" purchased from Gas Pipe XI on March 11, 2014, contained the Schedule I controlled substance AB-Fubinaca.

158.   Both "Assassin Revolution" and "Alien Loose Leaf" contained the same materially false labeling as previously described.

### 130 E. Bardin Road, Arlington, Texas

159.   This location is owned by Ridgelea Complex Management, Inc. and does business as Gas Pipe XII.

160.   On November 22, 2013, undercover officers purchased "spice" from Gas Pipe XI, which was specifically labeled "Assassin Revolution."

161.   The package of "Assassin Revolution" purchased from Gas Pipe XI on November 22, 2013, contained the Schedule I controlled substance XLR-11.

162.   On March 10, 2014, undercover officers purchased "spice" from Gas Pipe XI, which was specifically labeled as "Assassin Revolution."

163.   The package of "Assassin Revolution" purchased from the Gas Pipe XI on March 10, 2014, contained the Schedule I controlled substance AB-Fubinanca.

164.   The packages of "Assassin Revolution" contained the same materially false labeling as previously described.

165.   130 E. Bardin Road, Arlington, Texas, was purchased with proceeds traceable to the mail/wire fraud, distribution of a controlled substance or controlled substance analogue, and money laundering.

166.   130 E. Bardin Road, Arlington, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

167.   130 E. Bardin Road, Arlington, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

168.   130 E. Bardin Road, Arlington, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

## 5707 Broadway Blvd., Garland, Texas

169.   This location is owned by Ridgelea Complex Management, Inc. and does business as the Gas Pipe.

170.   On May 6, 2014, undercover officers purchased "spice" from this Gas Pipe location, which was specifically labeled "Plur."

171.   The package of "Plur" that was purchased from the Gas Pipe on May 6, 2014, contained the Schedule I controlled substance analogue THJ-2201.

172.    The package of "Plur" contained the same materially false labeling as previously described.

173.    5707 Broadway Blvd., Garland, Texas, was purchased with proceeds traceable to the mail/wire fraud, distribution of a controlled substance or controlled substance analogue, and money laundering.

174.    5707 Broadway Blvd., Garland, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7), as real property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 of the United States Code that is punishable by more than one year's imprisonment.

175.    5707 Broadway Blvd., Garland, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

176.    5707 Broadway Blvd., Garland, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

### Shahwan DTO's Financial Activity

177.    Lawrence Shahwan incorporated Sacred Sun Botanicals in 2009.   Although he has been involved in other business ventures, Sacred Sun Botanicals is the only source of income that Shahwan has had since 2009.

178.    The wealth accumulated by Shahwan is from the success he has had

operating Sacred Sun Botanicals.

179.    Sacred Sun Botanicals' sole business purpose is to manufacture/distribute "spice" under materially false labeling.

180.    On February 8, 2014, Shahwan was arrested by investigators at DFW International Airport and the following items were seized from Shahwan:

    a.  $9,579.00 in U.S. currency;

    b.  (4) pieces of assorted jewelry with an estimated value of $6,260; and

    c.  Assorted foreign currency with an estimated value of $682.55.

181.    Each of these items are either the proceeds of or were purchased with the proceeds derived from mail/wire fraud, manufacturing/distribution of Schedule I controlled substances and/or Schedule I controlled substance analogues, or money laundering.

182.    By reason of the foregoing, the defendant property is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

183.    By reason of the foregoing, the defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

184.    By reason of the foregoing, the defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7)

185.    On or about February 8, 2014, investigators seized a 2007 BMW 328I, VIN# WBAVA335X7PG49950 from Amelia Lorrenn Canada.

186.    This vehicle was purchased with the proceeds derived from mail/wire fraud, manufacturing/distribution of Schedule I controlled substances and/or Schedule I controlled substance analogues, or money laundering.

187.    The 2007 BMW 328I is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(4), as vehicles used or intended for use, to transport, or to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances acquired in violation of Title 21 of the United States Code.

188.    The 2007 BMW 328I is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

189.    The 2007 BMW 328I is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

190.    The 2007 BMW 328I is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C.

§ 1956(c)(7).

191.    On or about February 14, 2014, investigators seized funds from the

following accounts, which contained proceeds derived from or traceable to mail/wire

fraud, the manufacturing/distribution of controlled substances and/or their analogues, and

money laundering committed by the Shahwan and/or members of his DTO:

a.  Bank of America account ending in 3825;

b.  Bank of America account ending in 3812;

c.  Bank of America account ending in 9957;

d.  Prudential Annuities Services account ending in 0821;

e.  Oppenheimer Funds account ending in 7572;

f.  Oppenheimer Funds account ending in 0732;

g.  Oppenheimer Funds account ending in 7761;

h.  Oppenheimer Funds account ending in 5504;

i.  Oppenheimer Funds account ending in 5367;

j.  Oppenheimer Funds account ending in 0512;

k.  Oppenheimer Funds account ending in 0301;

l.  Oppenheimer Funds account ending in 3450;

m. Oppenheimer Funds account ending in 0633;

n.  Oppenheimer Funds account ending in 6567;

o.  Oppenheimer Funds account ending in 4663;

p.  Oppenheimer Funds account ending in 0136;

q.  Oppenheimer Funds account ending in 4061;

r.   Oppenheimer Funds account ending in 5060;

s.   JP Morgan Chase Securities account ending in 9264;

t.   JP Morgan Chase Securities account ending in 9268;

u.   JP Morgan Chase Securities account ending in 4100;

v.   Metro Bank account ending in 8404; and

w.   Metro Bank account ending in 8066.

192.   On or about February 19, 2014, investigators seized Shahwan's:

a.   2014 Mercedes-Benz CLS63, VIN# WDDLJ7GB8EA100462; and

b.   A wall painting, Viapagi print "Sweep."

193.   These items were purchased by Shahwan with proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

194.   The above listed accounts maintained by Shahwan are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

195.   The above listed accounts maintained by Shahwan are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

196.    The above listed accounts maintained by Shahwan are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

Angela Cooper Accounts

197.    On February 8, 2014, Denton County Sheriff's officers executed a search warrant at the home of Angela Cooper in Grapevine, Texas.

198.    Cooper worked as a "bagger" of "spice" for the Shahwan DTO from about March 2012 until December 2013.

199.    For her role as a bagger, Cooper received over $120,000, which was deposited into Cooper's Bank of America account ending in 9352.

200.    Therefore, the funds seized from Bank of America account ending in 9352 on or about February 14, 2014, and are the proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

201.    In addition, Shahwan gave Cooper approximately $150,000 in August 2013, and instructed her to put the money into a newly established bank account.

202.    Cooper placed the $150,000 from Shahwan in a Bank of America savings account ending in 5393.

203.    The funds seized from Bank of America account ending in 5393 on or about February 14, 2014, consists solely of proceeds derived from mail/wire fraud, the

manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

204.   The above listed accounts maintained by Angela Cooper are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance offense in violation of Title 21 of the United States Code.

205.   The above listed accounts maintained by Angela Cooper are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

206.   The above listed accounts maintained by Angela Cooper are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

<u>Sandra Shahwan and Rakan Shahwan Accounts</u>

207.   On February 8, 2014, a search warrant was executed at the home of Sandra Shahwan, and investigators discovered a set of scales and packaging material for "spice."

208.   Sandra Shahwan was a member of the Shahwan DTO and worked as a bagger and allowed her home to be used by others to bag for Shahwan as well.

209.   Between August 2012 and December 2013, Sandra Shahwan was paid approximately $593,000 from Shahwan through Sacred Sun bank accounts.

210.   Rakan Shahwan worked as a bagger for Shahwan and would bag multi-kilogram quantities of "spice" each week.

211.   Between March 2011 and December 2013, Rakan Shahwan received over $870,000 from Sacred Sun for his role in bagging the product.

212.   Sandra Shahwan maintained bank accounts in her name, as well as a joint account with Rakan Shahwan.   The following accounts were seized by investigators on February 14, 2014:

    a.   JP Morgan Chase bank checking account ending in 9939;

    b.   JP Morgan Chase bank checking account ending in 7067;

    c.   Viewpoint Bank account ending in 3656; and

    d.   Viewpoint Bank account ending in 9469.

213.   The funds seized from these accounts represent proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

214.   The above listed accounts maintained by Sandra Shahwan and Rakan Shahwan are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance offense in violation of Title 21 of the United States Code.

215.   The above listed accounts maintained by Sandra Shahwan and Rakan Shahwan are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

216.   The above listed accounts maintained by Sandra Shahwan and Rakan Shahwan are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C),

as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

217.    In addition, the following vehicles were seized from Sandra Shahwan on or about February 8, 2014:

      a.  2006 Mercedes-Benz E350, VIN# WDBUF56J06A802059; and

      b.  2005 Chrysler 300 Limited, VIN# 2C3JA53G95H67499.

218.    These vehicles were purchased with proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

219.    The 2006 Mercedes-Benz E350 and 2005 Chrysler 300 Limited are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(4), as vehicles used or intended for use, to transport, or to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances acquired in violation of Title 21 of the United States Code.

220.    The 2006 Mercedes-Benz E350 and 2005 Chrysler 300 Limited are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

221.    The 2006 Mercedes-Benz E350 and 2005 Chrysler 300 Limited are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

222.    The 2006 Mercedes-Benz E350 and 2005 Chrysler 300 Limited are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which

constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

Alyson Shahwan Accounts

223.    On February 8, 2014, a search warrant was executed at the home of Alyson Shahwan, Lawrence Shahwan's wife, and the following items were seized:

   a.   $10,000.00 in U.S. currency; and

   b.   2013 BMW 535I, VIN# WBAFR7C52D819318.

224.    These items are proceeds or were derived from proceeds from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

225.    The U.S. currency and 2013 BMW 535I seized from Alyson Shahwan are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

226.    The U.S. currency and 2013 BMW 535I seized from Alyson Shahwan are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

227.    The U.S. currency and 2013 BMW 535I seized from Alyson Shahwan are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

228.    Alyson Shahwan assisted Shahwan in operating Sacred Sun in the following manner:

    a.    Writing numerous checks to pay expenses incurred in the manufacturing of "spice;"

    b.    General bookkeeping duties; and

    c.    Attending a Las Vegas trade show to assist and promote the "spice" brands "Scentsi Star" and "Black Label."

229.    For her role within Sacred Sun, Alyson Shahwan was paid approximately $250,000 for the calendar year 2013, which was deposited into the following bank accounts maintained by Alyson Shahwan:

    a.    Bank of America account ending in 3722; and

    b.    Viewpoint Bank account ending in 3422.

230.    On or about February 14, 2014, investigators seized the funds in these accounts, which represent proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering .

231.    The above listed accounts maintained by Alyson Shahwan are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance offense in violation of Title 21 of the United States Code.

232.    The above listed accounts maintained by Alyson Shahwan are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

233.    The above listed accounts maintained by Alyson Shahwan are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

### American Airlines Air Pass

234.    During the execution of the search warrant at Alyson and Lawrence Shahwan's home on February 8, 2014, investigators located two American Airlines Airpass cards.

235.    One card was issued to Alyson Shahwan with Sacred Sun, Inc. (account no. 94WVH44).

236.    The second card was issued to Lawrence Shahwan with Sacred Sun (account no. 92WVH18).

237.    According to the American Airlines Airpass website, Airpass is a prepaid travel account that allows members to get unrestricted air travel at a fixed rate.

238.    These accounts were established with proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

239.    The above listed American Airlines Airpass accounts are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance offense in violation of Title 21 of the United States Code.

240.    The above listed American Airlines Airpass accounts are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

241.    The above listed American Airlines Airpass accounts are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

### Gold Coins

242.    Lawrence Shahwan purchased seven Canadian gold coins for $8,899.50 in U.S. currency from Dallas Gold and Silver.

243.    These gold coins were purchased with proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering .

244.    The above listed gold coins are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance offense in violation of Title 21 of the United States Code.

245.    The above listed gold coins are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

246.    The above listed gold coins are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in

18 U.S.C. § 1956(c)(7).

<u>Funds Held by the Internal Revenue Service</u>

247.   In November 2011, Shahwan established Bank of America account ending in 3825 in the name of Sacred Sun Botanicals Inc.

248.   Since the opening of this account until January 31, 2014, over $11 million in proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering have been deposited into this account.

249.   On October 30, 2013, Shahwan wrote a check this account to the United States Treasury Department in the amount of $750,000.

250.   The memo notation on this check states "Estimated Tax Deposit 3rd Quarter," along with Shahwan's social security number.

251.   According to individuals familiar with the Internal Revenue Service, Shahwan used $750,000 of corporate funds for Shahwan's personal tax liability, and these funds are held on deposit by the Internal Revenue Service in account bearing Shahwan's social security number for his benefit.

252.   Shahwan has yet to file a federal income tax return for the year 2013 and these funds have yet to be obligated to the Internal Revenue Service.

253.   These funds represent proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

254.    The funds deposited with IRS are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance offense in violation of Title 21 of the United States Code.

255.    The funds deposited with IRS are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

256.    The funds deposited with IRS are subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

### Ford Fusion Titanium

257.    On or about March 11, 2014, investigators seized a 2013 Ford Fusion Titanium, VIN# 3FA6P0K95DR378215, from James Apple.

258.    This vehicle was purchased with proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

259.    This vehicle was also used to facilitate the commission of an offense under Title 21 of the United States code.

260.    The 2013 Ford Fusion Titanium is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(4), as a vehicle used or intended for use, to transport, or to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances acquired in violation of Title 21 of the United States Code.

261.    The 2013 Ford Fusion Titanium is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

262.    The 2013 Ford Fusion Titanium is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

263.    The 2013 Ford Fusion Titanium is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

### The Gas Pipe's Financial Activity

264.    Gerald Shults and his daughter, Amy Lynn Herrig, have complete control over the financial aspects of what is referred to collectively in this investigation as the Gas Pipe DTO.[3]

265.    Over the years, the Gas Pipe DTO has had banking relations with Inwood National Bank, Wells Fargo, and UBS Financial Services.   Although other financial institutions have been used, accounts at those institutions have been ultimately merged into accounts maintained at the financial institutions identified above.

---

[3] Other key individuals in the Gas Pipe DTO may have signature authority over the "operating accounts" currently maintained at Wells Fargo, but only Shults and Herrig have control over the accounts held at UBS Financial Services.

266.     In general, each of the separate Gas Pipe retail stores has a checking account (a.k.a. an operating account) established for that particular location.

267.     Each retail store will utilize their operating account to pay expenses related to that location, and any excess funds are then ultimately transferred to one of the UBS accounts controlled by Shults and Herrig.

268.     Until February 2014, each of the operating accounts for the Dallas area retail locations was maintained at Inwood National Bank.   Currently, all of the Gas Pipe operating accounts are maintained at Wells Fargo.

269.     Primarily only credit card receipts from the individual stores are being deposited into the operating accounts.

270.     The Gas Pipe DTO utilizes an armored car service to pick up the currency from the day to day sales of "spice" from each retail location, which is then deposited into the overall account held in the name of Amy Lynn, Inc.

271.     The excess funds (profits) are transferred from each of the retail locations checking accounts to the checking account of Amy Lynn Inc. on a regular basis, or they are transferred directly to financial accounts controlled by Herrig and Shults at UBS Financial Services.

272.     The funds deposited in these accounts and transferred elsewhere have been directly traced to the proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

3341 Winthrop Avenue, Fort Worth, Texas

273.    On April 29, 2013, Shults and/or Amy Herrig conducted the following wire transfers to purchase the real property located at 3341 Winthrop Avenue, Fort Worth, Texas:

   a.  Transfer of $1,442,328.40 from a Gas Pipe UBS Financial Serivces account to Silver Star Title; and

   b.  Transfer of $825,000.00 from a Gas Pipe UBS Financial Services account to Silver Star Title.

274.    The funds used to purchase this property are directly traceable to the proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

275.    The 3341 Winthrop Avenue, Fort Worth, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

276.    The 3341 Winthrop Avenue, Fort Worth, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

277.    The 3341 Winthrop Avenue, Fort Worth, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

## 28927 S.E. Woods Road, Eagle Creek, Oregon

278.    On April 24, 2013, Shults and/or Amy Herrig wire transferred $301,650.84 from a Amy Lynn, Inc.'s UBS Financial Serivces account to First American Title to purchase this property.

279.    The funds used to purchase this property are directly traceable to the proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

280.    The 28927 S.E. Woods Road, Eagle Creek, Oregon, is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

281.    The 28927 S.E. Woods Road, Eagle Creek, Oregon, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

282.    The 28927 S.E. Woods Road, Eagle Creek, Oregon, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

## 3320 Harvard Avenue, Highland Park, Texas

283.    On November 12, 2013, Shults and/or Amy Herrig, wire transferred $1,331,723.67 from a Gas Pipe UBS Financial Services account to Independence Title for the purchase of 3320 Harvard Avenue.

284.    The funds used to purchase this property are directly traceable to the proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

285.    The 3320 Harvard Avenue, Highland Park, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

286.    The 3320 Harvard Avenue, Highland Park, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

287.    The 3320 Harvard Avenue, Highland Park, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

### 5506 East R.L. Thornton Freeway, Dallas, Texas

288.    On February 19, 2014, Ridgelea Complex Management, Inc. wire transferred $5,000 to Sendera Title as earnest money for the purchase of this property.

289.    On March 3, 2014, $313,128.55 in funds were wired from a Gas Pipe UBS Financial Services account to Silver Star Title to be used to purchase this property.

290.    The funds used to purchase this property are directly traceable to the proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

291.    The 5506 East R.L. Thornton Freeway, Dallas, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

292.    The 5506 East R.L. Thornton Freeway, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

293.    The 5506 East R.L. Thornton Freeway, Dallas, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

<u>3327 – 3345 Winthrop Avenue, Fort Worth, Texas</u>

294.    On September 4, 2012, Carolyn Settlemire issued a $50,000 check drawn from an Amy Lynn, Inc. account at Inwood Bank which was payable to Sendera Title as earnest money for this property.

295.    On April 29, 2013, Shults and/or Amy Herrig wire transferred $1,442,328.40 from a Gas Pipe UBS Financial Services account to Silver Star Title to complete the purchase of this property.

296.    The funds used to purchase this property are directly traceable to the proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

297.    3327 – 3345 Winthrop Avenue, Fort Worth, Texas, is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21 of the United States Code.

298.    The 3327 – 3345 Winthrop Avenue, Fort Worth, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

299.    The 3327 – 3345 Winthrop Avenue, Fort Worth, Texas, is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

### 6025 Camp Bowie Avenue and 3309 Winthrop Avenue, Fort Worth, Texas

300.    6025 Camp Bowie Avenue is known as the "Ridgelea Theater" and is a part of the office complex located at 3309 Winthrop Avenue.

301.    These properties were purchased at the same time in December 2010 by Shults via Amy Lynn, Inc.

302.    The funds used to purchase these properties are directly traceable to the proceeds derived from mail/wire fraud and money laundering.

303.    Additionally, Shults and/or Amy Herrig have invested large sums of money to rehabilitate 6025 Camp Bowie Avenue.   These improvements have been continuous since the purchase date and these funds are directly traceable to the proceeds derived from mail/wire fraud, the manufacturing/distribution of Schedule I controlled substances and/or their analogues, and money laundering.

304.     These properties are subject to forfeiture to the United States pursuant to 21

U.S.C § 881(a)(6), as proceeds traceable to a controlled substance violation under Title 21

of the United States Code.

305.     These properties are subject to forfeiture to the United States pursuant to 18

U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in

violation of 18 U.S.C. §§ 1956 and/or 1957.

306.     These properties are subject to forfeiture to the United States pursuant to 18

U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable

to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C.

§ 1956(c)(7).

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

BRIAN D. POE
Assistant United States Attorney
State Bar of Texas No. 24056908
1100 Commerce St., Suite 300
Dallas, Texas   75242
Telephone:    214.659.8670
Facsimile:    214.659.8803
Email:      brian.poe@usdoj.gov

## VERIFICATION OF COMPLAINT

I, Richard C. Gardner, declare under penalty of perjury that the following is true and correct to the best of my knowledge.

I am a Special Agent with the Drug Enforcement Administration, and I have been assigned to assist in the forfeiture of the defendant property.   I have read the foregoing Complaint for Forfeiture *In Rem* and know its contents.   The information contained in the Complaint for Forfeiture *In Rem* has been furnished from official government sources and, based on information and belief, the allegations contained in the Complaint for Forfeiture *In Rem* are true and correct.

Date: June 4, 2014

RICHARD C. GARDNER
Special Agent
Drug Enforcement Administration

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

$472,871.95 in funds seized from Bank of America account ending in 9957 et al.

**(b)** County of Residence of First Listed Plaintiff

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED
JUN - 5 2014
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian D. Poe, Assistant United States Attorney
1100 Commerce Street, Suite 300
Dallas, Texas 75242    214.659.8670

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 USC 881(a) and 18 USC 981(a)

Brief description of cause:
Civil Forfeiture

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:

*(See instructions):*

JUDGE

DOCKET NUMBER

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 06/05/2013 | AUSA Brian D. Poe |

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____